## The Philipsburg Water Company, Appellant, *v.* the Citizens Water Company and O. D. Sheppard.

*Corporations—Water companies—Exclusive priviliges—Findings of court below.*

The Supreme Court will not sustain the claim of a water company to an exclusive privilege to supply a borough with water, where the court below has found upon sufficient evidence that the company for a period of five years had divided among its stockholders from its earnings a dividend equal to eight per cent per annum upon its capital stock.

*Water companies—Injunction—Use of stream.*

A water company will not be enjoined at the suit of a prior water company from taking water from a stream, where it appears that the prior company had never condemned the stream or any portion of it, but had simply taken water from it, and that the water supply of the stream was more than twenty times the quantity of water consumed by the inhabitants of a borough, as furnished by the first company.

Argued April 18, 1898.  Appeal, No. 288, Jan. T., 1897, by plaintiff, from decree of C. P. Centre Co., Aug. T., 1897, No. 65, dismissing bill in equity.  Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Bill in equity for an injunction.

LOVE, P. J., found the facts to be as follows :

The plaintiff company filed its bill May, 1897, setting forth that it had been duly incorporated June 15, 1881, under the general corporation act of 1874, and by virtue of its charter of incorporation was authorized to furnish a full and adequate supply of pure fresh water to the inhabitants of the borough of Philipsburg. That the said company immediately organized and erected its plant, reservoir, laid mains, etc., and has been furnishing the citizens of Philipsburg with a full supply of pure fresh water from the waters of Cold Stream. The capital stock of the company was, when chartered, $30,000, and subsequently increased to $60,000. That the defendant company chartered January 19, 1897, proposes to take water from said stream, to supply the inhabitants of Philipsburg borough, and places adjacent thereto, and by so doing will irreparably injure the plaintiff's plant by depriving it of a sufficient water supply for the purposes of its charter, etc., and pray that the defendant company may be perpetually enjoined from erecting its plant, and from interfering with the rights of the plaintiff, and from supplying the inhabitants of the borough of Philipsburg with water, as authorized by its charter.

The plaintiff company was duly chartered under provisions of the acts of April 29, 1874, and June 15, 1881, with a capital stock of $30,000. It immediately organized and erected its plant on Cold Stream, built a reservoir, and laid its mains and pipes, and commenced furnishing the inhabitants of Philipsburg with water from said stream, and has been doing so ever since, and so far as the facts in this case are concerned, there has been no complaint for want of a full supply of water, or as to its quality. It purchased a large dam erected on said stream, and for a few years the water power was sufficient to run the pumps. Two pumps were at first placed in the plant. In the course of four or five years two additional pumps were erected, and an engine and boiler placed at the pumping station to furnish additional power. The evidence shows that since the additional pumps were placed, during dry weather or seasons, the steam power is used to pump with, for about four months of the year.

The plaintiff company also extended its pipes to Chester Hill, to Point Look-Out and the Miners' Hospital beyond the borough limits, and furnished water outside of its chartered limits, to quite a number of people and for the hospital, and for the Beech

Creek Railroad Company. August 31, 1894, the plaintiff company had its charter amended authorizing and empowering it to furnish water, not only to the inhabitants of Philipsburg, but to the inhabitants of places adjacent thereto.

August 18, 1884, the plaintiff company at a stockholders' meeting passed a resolution to increase the capital stock of the company to $60,000, which was done. February 12, 1885, $10,000 of the increase was ordered by a meeting of the board of directors, and certificates issued therefor. Of this amount $7,000 was from the earnings of the company, and $3,000 paid in by the stockholders who received the shares. June 18, 1890, another increase of $10,000 of stock was ordered, the whole of which came from the earnings of the company, and on July 18, 1892, the stock was again increased $10,000 from the earnings of the company, making the capital stock of the company then issued $60,000, $27,000 of which was from the earnings or profits of the company, which had mostly been applied to the enlargement and improvement of the works of the company, although the evidence fails to show in detail the costs of the said extension and enlargement of the plant. The plaintiff never proceeded to condemn any portion of Cold Stream under the right of eminent domain, but only acquired the right to the dam and water power by purchase, but acquired no legal right to the water diverted from the stream to the reservoir, and which furnishes the supply to the inhabitants of Philipsburg and points adjacent thereto.

The plaintiff company according to the statement of the plaintiff, since 1884, has paid an average annual dividend upon its original capital and increased capital of something over six per cent per annum; we think it would equal seven per cent per annum from 1884, the first year a dividend was declared. This is independent of the stock issued out of the earnings of the company, to include the $27,000 of increased stock, which came from the earnings of the company. It is conceded that the annual dividends upon the original stock, as well as the increased stock, is largely in excess of eight per cent per annum,—during the period the company has been in existence.

The defendant company, against the protest of the plaintiff, and after a hearing before the officers of the commonwealth, was duly chartered January 19, 1897, and has organized, and

has instituted proceedings for right of way for laying pipes, and on May 29, 1897, passed a resolution to acquire the right to appropriate so much of the water of Cold Stream as may be necessary for the uses of the company. The evidence shows that the defendant company contemplates erecting a dam on Cold Stream, between three and four miles above the location of the plaintiff's dam, and pipe the water therefrom to Philipsburg and places adjacent thereto, to supply the inhabitants thereof, as authorized and empowered by its charter. The size of the main pipe it proposes to lay does not appear in the testimony, the quantity of water it proposes to divert from the stream does not therefore appear. The evidence shows that at a fair stage of water, the volume of water that flows through Cold Stream into plaintiff's dam is about 36,000,000 gallons every twenty-four hours. That of this amount about 15,000,000 gallons has its source below the point on the stream where the defendant company proposes to construct its dam, and about 21,000,000 gallons of it has its source above the point where said dam is proposed to be located. During the dry months of the season, being ordinarily about three or four months, this quantity may be diminished from fifty to sixty per cent, depending upon the character of the drought, but in any event the evidence to our mind shows clearly, that at no time has there been less than from 6,000,000 to 8,000,000 gallons of a flow in twenty-four hours. The evidence shows that the average consumption of water by the inhabitants, now supplied by the plaintiff company, is not more than between 300,000 and 400,000 gallons every twenty-four hours. So that the evidence clearly shows that the supply of water from Cold Stream, for the consumption of the inhabitants of Philipsburg and places adjacent thereto, is quite ample for that purpose for both companies, and that the quantity that may be used by the defendant would not deprive the plaintiff of an ample supply of water to meet the wants of the inhabitants. The amount used by defendant company may impair the water power of the plaintiff to a greater or less extent, when the water is at its lower stages during the dryer months of the year.

CONCLUSIONS OF LAW.

The plaintiff contends upon the above state of facts that it

has the exclusive right under its charter to supply the inhabitants of the borough of Philipsburg with a supply of pure fresh water from Cold Stream, and that the defendant has no right to interfere therewith:

It contends first, that under the provisions of its charter under the act of 1874, it has the exclusive right until it realizes a dividend of eight per cent per annum, for a period of five years, and that it has not realized the dividends provided for under the said act, giving it the exclusive right. If this be so, then its contention would be well founded, unless by the amendment of its charter in 1894 it became subject to the Act of June 2, 1887, P. L. 310, sec. 3, which it has been held repeals the clause or section of the act of 1874, giving exclusive privileges to water companies for a period until they have realized dividends for a period of five years on their capital stock equal to eight per cent per annum: Water Company v. Water Co., 148 Pa. 568.

The act of April 29, 1874, provides: "The right to have and enjoy the franchises, etc., within the district, shall be an exclusive one, and no other company shall be incorporated for that purpose until the said corporation shall have from its earnings, realized and divided among its stockholders during five years, a dividend equal to eight per cent per annum, upon its capital stock, provided that the corporation shall at all times furnish pure gas and water."

The plaintiff from 1881 to 1896 divided as cash dividends among its stockholders the sum of $40,000. The stockholders all told paid into the company $33,000 as capital. In addition to the cash dividends they divided as stock out of the earnings of the company $27,000 in the shape of increased capital stock. Is this stock so issued as increased capital out of the earnings of the company to be regarded as dividends under the provisions of the act of 1874?

It is conceded that these $27,000 were out of the earnings of the company. That it went into the enlargement and extension of the works, which increased their earning power and the income of the company. These earnings were therefore realized, and divided in the shape of stock issued to the stockholders upon which increased stock the stockholders received the same percentage of dividends as upon the original capital stock, and from 1886 to 1896, inclusive, they received an annual cash divi-

dend upon all the stock of about seven per cent per annum, as well as $20,000 in addition thereto in the shape of increase of stock, from the earnings of the company. It is very clear that the enlargement and extension of the work enhanced the value of the plant equal to the earnings spent thereon, as it was able to earn about seven per cent cash dividends upon the increased capital thereof. We think the increased issues of stock in this case from the earnings or surplus in the treasury of the company must be considered as dividends under the provisions of the act of 1874, as realized and divided among the stockholders.

The court entered a decree dismissing the bill.

*Error assigned* was the decree of the court.

*Ellis L. Orvis* and *John G. Johnson*, with them *George W. Zeigler*, *Wilbur F. Reeder* and *Calvin M. Bower*, for appellant. —If the plaintiff is nothing more than a lower riparian owner it is entitled to the remedy prayed for, and the injunction should have been granted: Shenandoah Company's App., 2 W. N. C. 48.

If the plaintiff has no greater right than those of a lower riparian owner, then it has a right of property to the stream, and has a right to the "flow as it is wont by nature without material diminution or alteration." Its right is a property right, and not a mere easement: Gould on Waters, sec. 25; Wheatley v. Baugh, 25 Pa. 528; Gardner v. Newburgh, 2 Johns. Ch. 162; Haupt's App., 125 Pa. 211.

The plaintiff has greater rights than that of a lower riparian owner: White v. Meadville City, 177 Pa. 643; Metzger v. Beaver Falls Borough, 178 Pa. 1; Wilson v. Borough of Rochester, 180 Pa. 509.

If the plaintiff, as the court below finds, is only a lower riparian owner (which we do not concede), it still has property in the flow of the stream through its land and the water power afforded thereby, and particularly so, since water power has been utilized continuously by it, and its successors in the title, since 1866: McCalmont v. Whitaker, 3 Rawle, 84; Barclay R. R. and Coal Co. v. Ingham, 36 Pa. 194; Penna. R. R. v. Miller, 112 Pa. 34; Lord v. Meadville Water Co., 135 Pa. 122; Haupt's App., 125 Pa. 211; Appeal of Pennsylvania Lead Co., 96 Pa. 116; Unangst's App., 55 Pa. 128.

The injury complained of is one of a continuing and permanent nature, for which an action at law would not afford a complete and adequate remedy: Com. v. P. & C. R. R., 24 Pa. 159; Sterling's App., 111 Pa. 35; Stewart's App., 56 Pa. 413; Beidelman v. Foulk, 5 Watts, 308; McCallum v. Germantown Water Co., 54 Pa. 57.

Private property cannot be taken for public use without compensation or securing the payment of the same to the owner. This right can only be enforced by injunction: McClinton v. P., Ft. W. & C. Ry. Co., 66 Pa. 404; Clark v. R. R., 145 Pa. 438; Lehigh Coal & Nav. Co. v. Scranton Gas & Water Co., 6 Dist. Rep. 303.

*A. O. Furst,* with him *W. D. Crosby,* for appellee.—Dividends of a corporation, declared out of the profits and paid in stock, are equally liable to a tax as dividends paid in cash: Com v. Cleveland, Painesville, etc., R. R., 29 Pa. 370; Citizens' Pass. Ry. v. Philadelphia, 49 Pa. 251; Com. v. Pittsburg, Fort Wayne, etc., Ry., 74 Pa. 83; Cook on Stock and Stockholders, sec. 545.

We submit that, having accepted a new charter embracing additional territory, after the repealing act of June 2, 1887, appellant corporation no longer possessed exclusive franchises. These letters patent virtually created a new corporation in new territory: Freeport Water Works v. Prager, 129 Pa. 605.

OPINION BY MR. JUSTICE McCOLLUM, January 2, 1899:

The Philipsburg Water Company was incorporated on June 15, 1881, for the purpose of furnishing water to the inhabitants of the borough of Philipsburg in Centre county. It promptly entered upon the prosecution of the work for which it was created. For thirteen years from the commencement of operations it was restricted to the furnishing of water to the inhabitants of said borough, but as it was desirous of increasing its business it obtained on August 31, 1894, an amendment of its charter authorizing it to furnish water to the inhabitants of places adjacent thereto.

The Citizens Water Company was incorporated on January 19, 1897, for the purpose of supplying water to the inhabitants of the borough of Philipsburg, and to such persons, partnerships and corporations residing therein and adjacent thereto as de-

sired the same. It proceeded without delay to make arrangements for an adequate supply of water, and to provide the proper facilities for conveying it to its patrons within the territory included in its charter. While thus engaged it was met by the Philipsburg Company with a bill in equity to restrain it from appropriating the water of Cold Stream, or in any manner interfering with the accustomed flow of the same, and also to restrain it from diverting the water from said company's dam, reservoirs, pipes, etc., and from supplying or attempting to supply the inhabitants of Philipsburg with water in any manner whatever so as to interfere with the exclusive franchises previously enjoyed by said company, and finally to restrain it from doing any act or acts by which the value of the capital stock of said company would be in any manner impaired.

The Citizens Company promptly filed its answer to the bill and thereupon the parties agreed that the case should be heard as upon final hearing upon bill, answer and testimony.

The most important question raised by the pleadings was whether the Philipsburg Company possessed the exclusive privilege of furnishing water to the inhabitants within the territory embraced in its charter. That the company by its original charter acquired the privilege under and by virtue of the act of 1874, and subject to the restriction imposed by it, is undisputed. The question whether the act of June 2, 1887, and the company's amendment of its charter in 1894 deprived it of the privilege there acquired was not decided by the court below, although it was held in Luzerne Water Co. v. Toby Creek Water Co., 148 Pa. 568, that the said act repealed by implication the exclusive privileges given to water companies by the act of 1874. It was evidently considered unnecessary to determine this question, as the court found that the complainant had, for a period of five years, divided among its stockholders, from its earnings, a dividend equal to eight per cent per annum upon its capital stock. It is conceded that if this finding was authorized by the evidence the complainant's claim of an exclusive privilege is defeated by it. The evidence on which the finding was based related to the stock and cash dividends. We have carefully examined this evidence and are convinced by it that it fully warranted the finding, and that the latter was the only conclusion fairly deducible from the former.

The other matters of which the Philipsburg Company complains in its bill relate to the water supply required for the inhabitants within the territory covered by its charter, and to the depreciation in value of its capital stock as a consequence of the competition which would naturally follow the establishment of another plant. The answer to these complaints is that the water supply of Cold Stream is more than twenty times the quantity of water consumed by the inhabitants of Philipsburg, as furnished by the complaining company, and that the probable effect upon the value of its capital stock as the result of competition is no cause for the intervention of a court of equity. Besides the Philipsburg Company has never condemned Cold Stream or any portion of it for the purposes of its charter, although the water supply for its customers has, since the establishment of its plant until the present time, been furnished from it. The Philipsburg Company therefore has as against the Citizens Company the position and rights of a lower riparian owner, and nothing more.

All the material facts found by the court have adequate support in the evidence, and we discover nothing in them which calls for an issuance of the injunction prayed for in the company's bill. The case before us is not within the class of which White v. City of Meadville is a type, and therefore a discussion of cases of that class is unnecessary. They are not applicable to the case at bar.

Judgment affirmed.